**SUMMIT VILLA CARE CENTER, INC., Appellant,**

v.

**OHIO DEPARTMENT OF HEALTH, Appellee.**

[Cite as *Summit Villa Care Ctr., Inc. v. Ohio Dept. of Health* (1992), 81 Ohio App.3d 761.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–84.

Decided July 14, 1992.

762

*Buckingham, Doolittle & Burroughs* and *Thomas W. Hess,* for appellant.

*Lee Fisher,* Attorney General, and *Dennis Nealon,* Assistant Attorney General, for appellee.

PETREE, Judge.

Appellant, Summit Villa Care Center, Inc., appeals from an order of the Certificate of Need Review Board ("CONRB") which denied appellant's application for a certificate of need ("CON") to relocate thirty long-term-care beds within Summit County from Rafferty's Nursing Home ("Rafferty's") in Clinton, Ohio, to Summit Villa's proposed facility in Tallmadge, Ohio. In this appeal, appellant presents three assignments of error, which are as follows:

"I. Did the Ohio Department of Health err in denying a Certificate of Need to Summit Villa Care Center, Inc.?

"II. Did the Ohio Department of Health err in finding that Rafferty's Nursing Home was not an existing health care facility?

"III. Should the Ohio Department of Health be estopped in denying a Certificate of Need to Summit Villa Care Center, Inc.?"

On September 12, 1990, appellant filed an application for a CON with appellee, the Ohio Department of Health. Appellant sought to expand its CONRB–approved, fifty-bed nursing home facility into an eighty-bed facility. The proposed bed expansion was to be accomplished by acquiring the operating rights to thirty long-term-care nursing home beds previously granted a CON for use at Rafferty's. After review, the Director of Health denied the application on March 7, 1991 because Rafferty's was not an existing health care facility qualifying for relocation of beds and because Summit County did not need any additional long-term-care beds. Appellant appealed to the CONRB, where an evidentiary hearing was held before a hearing examiner.

The hearing examiner rejected appellant's arguments that Rafferty's, as a licensed nursing home, qualified for relocation as an existing health care facility under Ohio Adm.Code 3701–12–232(E). Further, the hearing examiner rejected appellant's argument that the state was estopped from denying that Rafferty's was an existing health care facility. Lastly, the hearing examiner found that appellant failed to demonstrate that there was a need for additional beds in the area. Accordingly, the hearing examiner recommended that the application be denied. The CONRB adopted the hearing examiner's report and recommendation on December 19, 1991 and thereby denied the application.

Appellant's second assignment of error presents the threshold issue of whether the CONRB erred in denying the application for relocation on the ground that Rafferty's was not an "existing health care facility" under Ohio Adm.Code 3701–12–232. This rule provides in pertinent part:

"(A) In addition to review under other applicable provisions of the Administrative Code, *the director shall not approve an application for a certificate of need to replace an existing long-term care facility or to relocate existing long-term care beds from one site to another unless* the application meets all of the criteria prescribed by this rule. * * *

" * * * *

"(E) *The facility being replaced or from which beds are being relocated meets the definition of an existing health care facility established by paragraph (F) of rule 3701–12–01 of the Administrative Code at the time the decision is made on the certificate of need application.* If the application proposes relocation of approved beds, the certificate of need for the beds shall not have been withdrawn before the decision is made on the application proposing relocation." (Emphasis added.)

In turn, Ohio Adm.Code 3701–12–01(F) provides:

"(F) 'Existing health care facility' means a facility that is licensed or otherwise approved to practice in this state in accordance with applicable law, is staffed and equipped to provide health care services and actively provides health care services or has not been actively providing health care services for less than twelve consecutive months."

■■■ Appellant has not disputed that Rafferty's last patient day was September 14, 1989 and that no health care services have been provided at that facility since that date. While appellant's application was filed within a year from that date, clearly Ohio Adm.Code 3701–12–232(E) mandates that the director shall not approve the application if, *at the time his decision is made,* the transferring facility is not an existing health care facility. Here, the director denied the application on March 7, 1991. It is undisputed that

Rafferty's did not actively provide health care services for twelve consecutive months prior to that date of decision. Consequently, Rafferty's was not an existing health care facility whose long-term beds could be relocated.

In this appeal, appellant has not challenged the validity of these administrative rules. Further, appellant has not argued that the director wrongfully delayed consideration of its application. Indeed, appellant filed its application only two days prior to the lapse of the twelve-month period following Rafferty's last patient day. Instead, appellant argues here that Rafferty's was an existing health care facility because, after appellant's application was filed, appellee continually renewed Rafferty's existing nursing home license and the license has remained in existence to date.

Appellant's argument has no merit. Appellant cannot point to any statute or administrative rule which makes licensure under R.C. 3721.02 determinative of what constitutes an existing health care facility. On the contrary, Ohio Adm.Code 3701–12–01(F), the provision expressly made applicable to this question, clearly states in the conjunctive that an "existing health care facility" is one which (1) is licensed or otherwise approved to practice in this state in accordance with applicable law, (2) is staffed and equipped to provide health care services, and (3) actively provides health care services or has not been actively providing health care services for less than twelve consecutive months.

In this case, Rafferty's patently does not qualify as an existing health care facility under the applicable administrative rules. Accordingly, appellant's second assignment of error is not well taken.

Appellant's third assignment of error presents the issue of whether appellee should be estopped from denying that Rafferty's was an existing health care facility. First, appellant relies on the fact that its president, James B. Renacci, was informed by personnel at the Ohio Department of Health and the Ohio Department of Human Services that Rafferty's was a licensed nursing home and eligible to participate in the Medicaid program. Second, appellant relies on the fact that, in its own working inventories, appellee listed Rafferty's as an existing facility and counted its beds as existing beds.

■ As a general rule, principles of equitable estoppel do not apply against the state or its agencies in the exercise of governmental functions. *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 555 N.E.2d 630; *Chevalier v. Brown* (1985), 17 Ohio St.3d 61, 17 OBR 64, 477 N.E.2d 623; *Westerville v. Kuehnert* (1988), 50 Ohio App.3d 77, 553 N.E.2d 1085. We seriously doubt that the intensive regulation and apportionment of health care services and facilities carried on by appellee could be characterized as any-

thing but a governmental function. Nevertheless, we need not determine that issue because appellant's estoppel arguments fail in any event.

■ First, even though in the summer of 1990 agency personnel communicated to appellant's president that Rafferty's was licensed and Medicaid-eligible, these facts, which were true at the time, do not in themselves establish that Rafferty's was an existing health care facility under Ohio Adm.Code 3701–12–232(E). As discussed above, such facts are simply immaterial. Likewise, the fact that appellee renewed Rafferty's nursing home license is equally immaterial. Manifestly, there is no evidence that any state employee falsely represented to appellant that Rafferty's was a qualified facility under this rule or that Rafferty's was in any way exempt from it.

Second, it is true that appellee prepared various inventories which included Rafferty's facility and beds in the ongoing counts for Summit County. For instance, appellant introduced into evidence long-term-care inventories developed in September 1989, May 1990, October 1990, and May 1991. Appellant also introduced the "1991 Annual Long Term Care Bed Need or Excess by County" publication. The long-term-care inventories listed Rafferty's as an "Existing Facility" and counted its beds as "Existing Beds" in the area. Even the annual bed excess publication may have included Rafferty's beds in the county totals. However, the hearing examiner correctly concluded that the inventories, which in part consisted of outdated, in-house documents, were not relied upon by appellant.

Renacci, a certified public accountant who engages in the processing of CON applications and in the financing for his health service companies, testified that he "usually" reviewed appellee's annual, long-term bed inventories. However, he did not testify that he relied on any of the documents in question in deciding whether to proceed to apply for a CON. On the contrary, he testified that he thought that if a facility was licensed and Medicaid-eligible it would qualify for relocation. That is why he checked about those matters. Furthermore, he obviously did not rely on the 1991 annual bed excess figures promulgated on January 1, 1991 when he decided to proceed with his project months before in September 1990.

An essential element of any estoppel claim is reliance. *Frantz, supra,* 51 Ohio St.3d at 145, 555 N.E.2d at 632–633; *Heckler v. Community Health Serv.* (1984), 467 U.S. 51, 59, 104 S.Ct. 2218, 2223–2224, 81 L.Ed.2d 42, 51–52. Here, there was no evidence of reliance. Accordingly, appellant's third assignment of error is not well taken.

Of course, appellee's miscalculations do bear on the ultimate soundness of the CONRB's conclusion regarding the need for the proposed beds, because these figures go into the bed-need calculation of Ohio Adm.Code 3701–12–

23(C). Hence, we turn to appellant's first assignment of error, in which appellant raises the issue of whether appellee erred in denying the certificate of need. However, even if we review this case under the bed-need formula contained in Ohio Adm.Code 3701–12–23(C), we must find that any miscalculations in the challenged inventories and the annual publication are entirely nonprejudicial.

As this court recently recognized in *In re Eaglewood Care Ctr.* (Mar. 17, 1992), Franklin App. No. 91AP–357, unreported, 1992 WL 55435, the fact that beds are authorized does not mean that they should be counted in determining whether to grant a CON application. Beds which will not be occupied within the reasonably foreseeable future should be excluded from the determination because the purpose of CON review is to serve the public by reviewing facilities and beds that are to be used. *Id.*

Here, the hearing examiner applied the "1991 Annual Bed Need and Excess by County" figures, which indicated an excess of three hundred fifty-nine beds in Summit County. The hearing examiner then excluded Rafferty's thirty beds from this figure. That still left an excess of three hundred twenty-nine beds in the county. As Ohio Adm.Code 3701–12–23(D) provides:

"For a county with a bed excess * * *, a presumption is created that the beds are not needed."

Hence, presumptively there was no need for appellant's proposed beds. Further, Roberta Houchen, a consultant who reviewed the application for the director, testified that the underutilization of beds in Summit County is probably one of the "worst situations in the state," considering the approved, oncoming beds. Likewise, the hearing examiner recognized that, despite the dispute among the parties about occupancy rates in the county, the figures there ranged from eighty-one to eighty-seven percent, well below the ninety-five percent required by Ohio Adm.Code 3701–12–23(D) for Summit and contiguous counties.

Appellant's only evidence of need came from Renacci. He testified that, in his experience, there was a need for additional long-term beds in Summit County. He cited his personal knowledge of the high utilization of his own nursing homes in that area. He also offered a newspaper article from the Akron Beacon Journal addressing the growing senior population in Summit County. He said that, in his business judgment, it would be better economically if there were more beds at the proposed facility. The hearing examiner ascribed little weight to his "brief and general testimony." The examiner also discredited the hearsay nature of the newspaper article. Plainly, the examin-

er concluded that there was no specific evidence submitted to support Renacci's assertions.

We should not disturb the administrative agency's conclusion that appellant did not present persuasive evidence to rebut the established presumption in Ohio Adm.Code 3701–12–23(D). *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 17 O.O.3d 65, 407 N.E.2d 1265. Accordingly, appellant's first assignment of error is not well taken.

For the foregoing reasons, appellant's assignments of error are overruled. Therefore, the decision of the CONRB is affirmed.

*Decision affirmed.*

WHITESIDE and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.