**In re 138 MAZAL HEALTH CARE, LTD., Appellee; Bable, Appellant.**

[Cite as *In re 138 Mazal Health Care, Ltd.* (1997), 117 Ohio App.3d 679.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96APH04–527.

Decided Jan. 9, 1997.

*Roth, Rolf & Goffman Co., L.P.A., Ira S. Goffman, Eric M. Simon* and *Dennis A. Roth,* for appellee 138 Mazal Health Care, Ltd.

*Betty D. Montgomery,* Attorney General, and *Bobbi–Lynn Jacobs,* Assistant Attorney General, for appellee Director of Health.

*Geoffrey E. Webster,* for appellant Bruce Bable.

---

DESHLER, Judge.

This is an appeal by appellant, Bruce Bable, from an order of the Ohio Department of Health ("ODH"), granting a certificate of need ("CON") to 138 Mazal Health Care, Ltd. ("Mazal"), for a proposed project to establish a new one-hundred-bed nursing home in Perry Township, Salem, Ohio.

On October 11, 1994, Mazal filed a CON application with the director of ODH for the replacement and relocation of fifty long-term-care beds. The beds were the subject of a CON which was previously granted to Nentwick Convalescent Home ("Nentwick") in 1992 for the treatment of Alzheimer's/dementia patients. Mazal subsequently submitted a revised application, proposing the construction of a new one-hundred-bed nursing home which, in addition to the replacement and relocation of the fifty approved Nentwick beds, sought the addition of fifty additional long-term-care beds, to be transferred from Ross Nursing Home ("Ross"), located in East Liverpool, pursuant to a purchase agreement entered into between Mazal and Ross. The proposed site for the new nursing home is in Columbiana County and all the beds at issue would be relocated in that county.

The director of ODH assigned the matter to a CON consultant for review of the application. On May 9, 1995, the consultant declared the application complete.

On May 19, 1995, Bruce Bable filed an objection to the CON application and requested an adjudication hearing pursuant to R.C. Chapter 119 and R.C. 3702.52. A hearing examiner was appointed, and a hearing was conducted on October 19, 1995.

At the hearing, appellant presented the testimony of two witnesses, appellant Bable, a nursing home administrator, and Katherine Will, a long-term-care and Ohio licensed nursing home administrator. Mazal also presented the testimony of two witnesses, Joseph Pilla, a project coordinator for Royal Manor Health Care, and June Cole, a corporate director of nurses and administrative assistant to the owner of Royal Manor Health Care. In his report and recommendation, the hearing examiner made the following findings of fact regarding the evidence adduced at the hearing:

"1. Bruce Bable, Appellant, is employed as a licensed nursing home administrator for Crandall Medical Center, the nursing home component for the continuing care retirement community of Copeland Oaks. It is located in Sebring, Ohio, Mahoning County, about one and one-half mile from Columbiana County. Mr. Bable lives in Columbiana County.

"2. The appeal was filed by Mr. Bable on behalf of his former employer, Windsor House, a nursing home in Columbiana County eight miles from Salem. Mr. Bable is not paying any of the cost of the appeal, including attorney fees. Windsor House did not participate in the hearing process.

"3. Mr. Bable has never seen the Ross Nursing Facility to which he is objecting.

"4. Mr. Bable's objection to the proposed facility is that the existing Ross Nursing Facility should stay where it is.

"5. There is a need for additional Alzheimer's beds in Columbiana County for the over–65 population for between 231 and 494 patients.

"6. Columbiana County's population is 98 percent white and 2 percent other. Ninety-one percent of the residents of Ross Nursing Home are from within Columbiana County, and 8 percent are other than white. Salem facilities had an occupancy rate of 96.1 and East Liverpool 98.3 percent.

"7. The distance between the present Ross facility and the proposed new facility is approximately thirty miles, with an average drive time of thirty minutes.

"8. There will not be an undue hardship imposed upon any segment of the Columbiana County population by building the proposed facility approximately 30 miles and 30 minutes from the existing Ross facility.

"9. The existing Ross facility is a 92–year–old building that was once a school house. It is out of date for its intended purposes. Its residents would be much better served in a new state-of-the-art facility.

"10. Appellant and Appellee agree there is a need within Columbiana County for the entire complement of 100 beds that is proposed by the applicant.

"11. The objections of Appellant/Objector are without merit."

Following the hearing, posthearing briefs were submitted by the parties, and objections were filed by appellant Bable. On February 14, 1996, the hearing examiner overruled appellant's objections and recommended that the CON be granted.

Appellant subsequently filed objections with ODH from the report and recommendation of the hearing examiner. By entry dated March 28, 1996, the director accepted the hearing examiner's recommendation and granted the CON.

On appeal, appellant sets forth the following five assignments of error for review:

"Assignment of Error No. 1.

"The journal entry of the Ohio Department of Health granting CON File No. 8026–01–94 is not supported by reliable, probative and substantial evidence.

"Assignment of Error No. 2.

"The journal entry of the Ohio Department of Health granting CON File No. 8026–01–94 is not in accordance with law, including R.C. §§ 3702.51, 3702.62 and rules adopted under R.C. §§ 3702.57.

"Assignment of Error No. 3.

"The journal entry of the Ohio Department of Health granting CON File No. 8026–01–94 erred in failing to shift the burden of production to appellee when appellant produced a *prima facie* case.

"Assignment of Error No. 4.

"The journal entry of the Ohio Department of Health granting CON File No. 8026–01–94 is in error because ODH admitted evidence *dehors* the record and did not permit appellant the opportunity to refute such evidence or to offer controverting evidence.

"Assignment of Error No. 5.

"The journal entry of the Ohio Department of Health granting CON File No. 8026–01–94 erred because the director of the Ohio Department of Health expressly admitted that he reviewed neither the transcript of the hearing nor the evidence introduced at that hearing and, further, because R.C. §§ 3702.52(C)(4) inappropriately permits the director of the Ohio Department of Health to delegate the authority to grant a certificate of need."

Appellant's first and second assignments of error are interrelated and will be considered together. Under these assignments of error, appellant contends that the order of ODH is not supported by reliable, probative and substantial evidence and that the order is not in accordance with law.

R.C. 3702.60(F)(3) sets forth the standard of review to be applied by this court in considering an appeal by an affected person from an order of the director of ODH, and provides:

"The court shall affirm the director's order if it finds, upon consideration of the entire record and any additional evidence admitted under division (F)(2) of this

section, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order."

Initially, we address appellant's contention that fifty of the beds which Mazal seeks to relocate are not "existing" beds and therefore cannot be the subject of relocation as provided under R.C. 3702.68(C)(2). Specifically, appellant notes that R.C. 3702.68(C)(2) provides in part that "[t]he director shall accept for review any application for either of the purposes described in division (B)(1)(a) or (b) of this section if the proposed increase in beds is attributable solely to a replacement or relocation of existing beds within the same county."

Appellant contends that the use of the phrase "existing beds" in the above statute necessarily restricts the director to a consideration only of beds that physically exist, *i.e.,* tangible beds which are currently being utilized. Thus, appellant asserts, the CON for fifty Alzheimer's beds previously granted to Nentwick does not involve the relocation of existing beds because, although the CON had been approved, the beds were never physically placed in use.

The hearing examiner, in addressing appellant's contention that the Nentwick beds did not exist, concluded:

"The Ohio Department of Health allowed review of the Nentwick beds as 'existing beds.' There is no evidence in the record, or any evidence presented at hearing to contradict that conclusion. There is no question that 50 of the proposed 100 beds relative hereto are to be a relocation of an approved CON. There is no evidence to support the theory that in order to relocate the beds resulting from that CON, the beds must actually be in use before the Ohio Department of Health can approve relocation."

The director of ODH, in addressing appellant's objection to the hearing examiner's determination, made the following findings:

"In his objections to the report and recommendation, Appellant argued that the Nentwick beds were not 'existing' beds and therefore, could not be relocated. However, there is no evidence that the ODH took action under rule 3701–12–18(C) of the Ohio Administrative Code to withdraw the validity of the CON granted for the Nentwick beds. Therefore, these beds continued to 'exist' and were capable of being relocated."

As noted by appellant, the statute at issue does not set forth a definition of "existing beds." However, in arguing that ODH has failed to properly interpret R.C. 3702.68, appellant relies in part upon the language of Ohio Adm.Code 3701–12–23(C), which defines the phrase "existing and approved beds" in the following manner:

"Existing and approved beds—presently licensed, registered, or certified long-term care beds located in long-term care facilities that are existing health care facilities as defined in paragraph (F) of rule 3701–12–01 of the Administrative Code *and long-term care beds for which a certificate of need or a determination of nonreviewability has been granted but that are not yet licensed, registered, or certified.* Existing and approved beds shall not include any hospital skilled nursing beds for which a certificate of need was granted under rule 3701–12–233 of the Administrative Code." (Emphasis added.)

Appellant contends that the above rule distinguishes between "approved beds" and "existing beds," and that ODH has confused the terms. Appellant argues that, while the fifty Nentwick beds for which a CON was previously granted may constitute approved beds, they cannot be considered to be existing beds under the definitional language of the rule. Appellant maintains that, by referring only to "existing beds" under R.C. 3702.68(C)(2), the General Assembly manifested its intent to exclude "approved beds" from CON consideration.

Appellant, in interpreting Ohio Adm.Code 3701–12–23(C), apparently construes the word "and," which separates the words "existing" and "approved," as meaning "or." Thus, under appellant's view, the words "existing" and "approved" are to be defined separately based upon a disjunctive construction. However, the "existing and approved" language of the rule is stated in the conjunctive, and the language employed is arguably susceptible of an interpretation that "existing and approved" beds represent "long-term-care beds for which a certificate of need or a determination of nonreviewability has been granted but that are not yet licensed, registered, or certified."

As noted above, both the hearing examiner and director rejected appellant's contention that the phrase "existing beds" includes only beds in actual use at the time the application was considered. There was evidence presented indicating that shortly after the effective date of R.C. 3702.68, ODH established a practice of reviewing CON applications for the relocation of long-term-care beds which had been approved, but not yet licensed, based on the agency's interpretation that such beds are existing.

A reviewing court, in interpreting a statute, "must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command." *State ex rel. McLean v. Indus. Comm.* (1986), 25 Ohio St.3d 90, 92, 25 OBR 141, 143, 495 N.E.2d 370, 372. Further, in order to sustain an agency's application of a statutory term, a reviewing court " 'need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.' " *Udall v. Tallman* (1965), 380 U.S. 1, 16,

85 S.Ct. 792, 801, 13 L.Ed.2d 616, 625, quoting *Unemp. Comp. Comm. of Territory of Alaska v. Aragon* (1946), 329 U.S. 143, 153, 67 S.Ct. 245, 250, 91 L.Ed. 136, 145.

As noted above, there was evidence presented indicating that shortly after the effective date of R.C. 3702.68, ODH adopted a practice of reviewing CON applications for the relocation of long-term-care beds which had been approved, but not yet licensed, based on the agency's view that approved beds, although not operational, nevertheless constituted existing beds for purposes of the statute. It has been held that "an administrative 'practice has peculiar weight when it involves a contemporaneous construction of a statute by the [persons] charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new.'" *Zenith Radio Corp. v. United States* (1978), 437 U.S. 443, 450, 98 S.Ct. 2441, 2445, 57 L.Ed.2d 337, 343, quoting *Norwegian Nitrogen Products Co. v. United States* (1933), 288 U.S. 294, 315, 53 S.Ct. 350, 358, 77 L.Ed. 796, 807. Moreover, while the statute at issue is silent regarding a definition of "existing beds," we have previously noted that the administrative rule defining "existing and approved beds" is susceptible of more than one interpretation, including a construction consistent with a broader reading of R.C. 3702.68 than the interpretation suggested by appellant. While ODH's interpretation of the relevant statute and rules may not be the only plausible one, we conclude that the agency's construction of the statute, finding that the beds at issue (long-term-care beds for which a CON was previously approved) "'exist' and were capable of being relocated," is not unreasonable.

Appellant cites this court's decision in *Summit Villa Care Ctr., Inc. v. Ohio Dept. of Health* (1992), 81 Ohio App.3d 761, 612 N.E.2d 377, in support of his contention that the Nentwick beds are not existing beds. We find *Summit Villa* to be distinguishable from the instant case. As noted by Mazal, the issue in *Summit Villa* was whether a facility which had been closed for more than twelve months qualified as an "existing health care facility." The issue of whether a facility qualifies as an "existing health care facility" (which is specifically defined under the administrative rules) is not dispositive of the issue raised in the present case.

Appellant also contends that the Nentwick CON automatically expired pursuant to the provisions of R.C. 3702.525, under which beds subject to a CON must be obligated within twenty-four months. Appellant's argument is without merit, as that statute, by its very terms, is inapplicable to the Nentwick CON. Specifically, R.C. 3702.525 applies to "each person holding a certificate of need granted on or after the effective date of this section." The effective date of R.C. 3702.525 is April 20, 1995; the Nentwick CON, however, was granted in 1992.

 Appellant next contends that the director failed to address a number of objections raised by appellant to the report and recommendation of the hearing examiner. Specifically, appellant argues that the director failed to address objections related to the following issues: (1) the abandonment of demographic classifications by the proposed CON, (2) the absence of zoning for the project, (3) the failure of the proposed project to serve identified residents, and (4) concerns related to staffing of the proposed facility.

Upon review of the record, we find no support for appellant's claims that the director failed to consider these objections. To the extent that appellant contends that the director "must address each objection of Appellant specifically," appellant has failed to cite any statute imposing such a duty. Appellant does cite R.C. 119.09 for the proposition that "objections shall be considered by the agency before approving, modifying or disapproving the recommendation." However, there is no indication that the director did not consider the objections at issue. Rather, the order of the director states that the recommendation of the hearing examiner was accepted "after taking into consideration the report and recommendation and all briefs, motions, *and objections filed.*" (Emphasis added.)

Regarding appellant's contention that the relocation of beds from the Ross facility would result in an abandonment of demographic classifications, the order of the director provides:

"[A]pplicant objects because the relocation of the Ross nursing home beds will abandon one-half of Columbiana County and eliminate service delivery to the indigent population in southeastern Columbiana county. I do not find the Appellant's argument persuasive. According to Mazal, '[c]urrent Ross Nursing Home residents will be given the opportunity to relocate from their current 92–year–old facility, * * * and thus will have access to a much improved nursing home facility. * * * Admission to the new Mazal facility will not be restricted; any resident will be admitted to any available bed, regardless of where in the county * * * they previously lived.' "

The hearing examiner also addressed this issue, making the following findings:

"The record reflects that the proposed facility will be in the same county as the existing Ross facility. Testimony reveals that the distance from the Ross facility to the proposed facility is between 24 and 31 miles, depending on what evidence is accepted. If the majority of existing residents of Ross are drawn from a 10 to 15 mile radius, moving those residents to a facility between 24 and 31 miles would result in some residents now being between 9 and 14 miles from the proposed facility, and some 34 to 46 miles. That travel distance is statistically insignificant to support the conclusion of adverse impact in the relevant geographic area. Some apparently would be closer to home and relatives, some would not.

" \* \* \*

"The fact that beds will be moved between 24 to 31 miles from their present location in a 92–year–old obsolete building does not establish that the CON application is not in the interest of residents of Columbiana County who need long-term care services. The beds are not leaving the county of residence of the relevant population."

Thus, the record indicates that the director and hearing examiner both considered appellant's argument regarding the loss of services in the area of the existing facility. The hearing examiner concluded that, while some residents might have additional travel distance caused by the relocation of beds, that distance was statistically insignificant to adversely affect or cause hardship to the relevant population. The director, in noting the above findings of the hearing examiner, also found significant the age and condition of the Ross facility and the fact that admission to the proposed facility would not be restricted. The findings of the hearing examiner and director on this issue are supported by reliable, probative and substantial evidence.

Appellant also contends that the proposed project will result in the abandonment of a portion of Columbiana County which consists of a "poverty-stricken, non-white population." Upon review, we find that there was a lack of sufficient evidence by the appellant on this issue.

█ We note that there was evidence presented at the hearing, cited in the hearing examiner's findings of fact, indicating that "[t]he minority population over the age of 65 years \* \* \* in the 0–10 mile radius in Salem is .5 percent. In East Liverpool it is 3 percent." However, appellant's witness who testified on this issue, Katherine Will, acknowledged that she had not calculated the demand for nursing home services in either Salem or East Liverpool on the basis of minority or nonminority considerations, stating that, to do so, "[w]e'd have a lengthy, lengthy study." Standing alone, the fact there is a slightly higher percentage of minority residents in one area of the county than another does not necessitate reversal of the granting of the CON.

Appellant next contends that there was no evidence presented showing that the project site is properly zoned. This issue was addressed by both the hearing examiner and the director. The hearing examiner made the following findings:

"There is no support in the record of hearing regarding whether or not the zoning status of the proposed site is appropriate. Appellant asserts that Joseph Pilla, Project Coordinator, testified that he was the individual who located the site, but never states what the zoning of the site is. At hearing, Mr. Pilla did not testify regarding the zoning; however, he was never asked a question on this issue."

Thus, the hearing examiner concluded that appellant had failed to present evidence that the site was not adequately zoned. The director of ODH made the following findings on this issue:

"Appellant also objected on the grounds that the CON applicant failed to provide an exact site for the CON, thereby not complying with the requirements of Chapter 3702. In reviewing the CON Staff Report for this application, the project site is specifically noted as 'Depot Rd., Perry Township' with an attached plot of the property. Rule 3701–12–08(B) of the Ohio Administrative Code, promulgated under the authority of Chapter 3702., specifically provides that an application shall include a street address 'or if there is not a street address, a plot or parcel number * * *.' Therefore, the applicant satisfied this requirement."

Appellant's main contention on appeal is that the property "is not presently zoned to authorize the intended development of a nursing home." Thus, it is asserted, this court should reverse the granting of the CON.

In support of his assertion that the property is not presently zoned, appellant cites Section 2.2 of the purchase agreement. However, that section indicates only that "[p]rior to closing, Purchaser shall have obtained all final zoning and other applicable governmental approvals * * * and authorizations of every kind necessary or appropriate to proceed with Purchaser's intended development * * *." The record itself does not indicate whether zoning approval has been obtained, and, as noted by the hearing examiner, while the project coordinator, Joseph Pilla, stated that he was the individual who located the site, he did not testify regarding the zoning status of the site; further, as the hearing examiner observed, Pilla "was never asked a question on this issue."

A similar argument regarding the appropriateness of the zoning status of a proposed site was addressed by this court in *In Re Manor Care of Kettering* (Dec. 31, 1992), Franklin App. Nos. 92AP–208 and 92AP–229, unreported, 1992 WL 394917. In *Manor Care*, appellants asserted that, because a proposed facility had not received zoning approval by the board of zoning appeals prior to the grant of a CON, the facility lacked appropriate zoning. This court found no error in the CON Review Board's granting of a CON "in effect contingent upon the obtaining of the appropriate zoning." *Id.* at 10. In so holding, this court reasoned that "the facility cannot be located on the property involved unless appropriate zoning approval is obtained," and that if such zoning approval is not obtained, "the CON in effect lapses or dies because the facility cannot be built." *Id.* at 10–11.

In the present case, the record supports the director's finding that the project site is specifically identified. The director determined that the application complied with the requirements of Ohio Adm.Code 3701–12–08(B), which

provides in part that "[t]he application shall include * * * a specific site for the project designated by a street address or, if there is not a street address, a plot or parcel number." As noted by ODH, the record indicates that the site is described in detail, including an address, a contract for the purchase of real estate set forth in the CON application, as well as a legal description of the property. Moreover, as previously noted, the evidence does not, contrary to appellant's contention, establish that zoning was not obtained; further, there is no evidence indicating that proper zoning could not be obtained. The granting of a CON "in effect contingent upon the obtaining of the appropriate zoning" does not require reversal of the CON at issue. *Manor Care, supra.*

Appellant next contends that the evidence indicates that Alzheimer's patients will not be served by the project. In appellant's objections filed before the hearing examiner, appellant asserted that "[a] much different type of patient than Alzheimer's and Ross Nursing Home residents must be intended to be served in the facility." The hearing examiner found no evidence to support this proposition.

Similarly, we find no merit to appellant's claim that Alzheimer's patients will not be served by the project. The application submitted by Mazal provides that "[t]he construction of the contemplated fifty beds will create a nursing facility dedicated to persons with Alzheimer's disease and related dementia * * *." Further, the record contains other reliable, probative, and substantial evidence indicating that Mazal intends to serve Alzheimer's patients with the proposed project.

Appellant also raised objections regarding the projected staffing of the project. The hearing examiner made the following findings on this issue: "Appellant/Objector asserts staffing is inadequate. Although there is some testimony in the record regarding staffing of Alzheimer's facilities, there is no support or testimony regarding inadequacy of the proposed staffing in the proposed facility."

We find no error in the hearing examiner's determination. While counsel for appellant questioned Mazal's witness, June Cole, on the issue of staffing needs for Alzheimer's patients in general, appellant failed to present sufficient evidence indicating how the staffing at this proposed project would be inadequate.

■ Upon review of the record, we find that the order of the director granting a CON to Mazal is supported by reliable, probative, and substantial evidence. As previously noted, during the hearing on this matter, appellant presented the testimony of two witnesses, appellant Bruce Bable and Katherine Will. Bable is an employee of Crandall Medical Center ("Crandall"), a nursing home in Mahoning County. According to Bable, Crandall is located approximately one mile from Columbiana County. Bable was formerly employed by Windsor House, Inc.

("Windsor"). Bable acknowledged that he filed an appeal on behalf of his former employer Windsor. During direct examination, Bable stated that he felt that the proposed Mazal CON would have an effect on the area because "the current nursing homes would lose their population base, * * * not be able to fill up as quickly or stay as full because of the competition in the area."

On cross-examination, Bable stated that his objection to the proposed project was not related to the need for beds in Columbiana County, but rather his view was that the facility should be built in another location in Columbiana County. Bable stated, "I just feel that the people in the East Liverpool area need the benefit of the additional beds more than the people in the Salem area do." When asked why the need was greater in the East Liverpool area, Bable responded, "I just feel that they need it more. It's not something I can explain, I guess." When asked whether he had a specific reason, Bable stated, "Not one that I can explain, I guess." Bable acknowledged that he had never been to the Ross facility.

Katherine Will also testified on behalf of appellant. Will stated that she conducted a study on the impact of moving beds from Ross in East Liverpool to Salem, as well as a study to determine whether there is a need for Alzheimer's beds. Will stated that her study indicated that Alzheimer's beds were needed in the county. Will testified that, in five years, there would be more of an elderly population in East Liverpool than in Salem. Will also indicated that there is a greater minority population in East Liverpool than in Salem.

Will testified that she drove from East Liverpool to Salem in one hour and ten minutes. She believed that relocating the beds from Ross to Salem would have a negative impact on accessibility of services to a medically underserved area or group. She stated that the project "may" have an impact in the Salem area on other providers' utilization.

On cross-examination, Will acknowledged that there was a need for one hundred beds in Columbiana County. In fact, Will testified that there was a need for between two hundred thirty-one and four hundred ninety-four beds in Columbiana County. Will stated that, although she had perused the CON application at issue in this case, she did not recall that the Ross facility was a ninety-two-year-old structure.

June Cole, the corporate director of nurses and an administrative assistant with Royal Manor Health Care, a parent company of Ross Nursing Home, testified on behalf of Mazal. Cole was questioned about the condition of the Ross facility. She stated that Ross is a fifty-bed facility in East Liverpool. The facility was originally a schoolhouse, and the patient rooms are located in former classrooms. The Ross facility is a two-story building.

Cole stated that Ross is a difficult building to work in because there are no elevators. Further, there is no parking available at the facility except on the street. Cole stated that parking is a "tremendous problem" and that the facility is located in a very rundown neighborhood. Cole indicated that there are five or six bathrooms in the building for the fifty patients. She further stated that Ross has limited capacity to provide physical and occupational therapy because of the poor condition of the building.

As previously noted, the hearing examiner, in overruling appellant's objections, made the following findings: there would not be an undue hardship on any segment of Columbiana County by building the proposed facility approximately thirty miles from the existing Ross facility; the existing Ross facility, a ninety-two-year-old building which was once a school house, is out of date for its intended purposes; the Ross residents would be much better served in a new facility; and appellant's own witness acknowledged a need within Columbiana County for the entire complement of one hundred beds proposed by the applicant.

The director, upon review of the evidence, agreed with the findings of the hearing examiner, noting that "[t]he proposed relocation of these beds to a newly constructed nursing home will provide residents the opportunity to reside in a more modern and safe environment than that which is currently provided at Ross Nursing Home." The record in this case indicates that the order of the director granting a CON to Mazal is supported by reliable, probative, and substantial evidence and is in accordance with law.

Based upon the foregoing, appellant's first and second assignments of error are overruled.

Under the third assignment of error, appellant contends that he presented a prima facie case and that the hearing examiner and ODH erred in failing to shift the burden of production to appellee. Appellant argues that there are "numerous examples" of such a failure to shift the burden of production, including appellant's contention that he presented evidence indicating that zoning for the project had not been approved.

We have previously addressed the issue of zoning under the second assignment of error. Appellant again contends that, because the real estate purchase agreement for the project site is conditioned upon proper zoning, evidence was presented indicating that the site is not properly zoned. We disagree. The fact that the purchase agreement is conditioned upon obtaining zoning does not establish that zoning was not obtained (or that proper zoning could not be obtained) for the site. The hearing examiner did not err in concluding that a lack of evidence was presented on this issue.

Appellant further contends that the hearing examiner and ODH erred in their determinations regarding the issues of the "existence" of the Nentwick beds, proposed staffing for the new project, financial feasibility of the project and the geographic area served. Again, these issues were previously addressed, and we find no error on the part of the hearing examiner or ODH in their findings.

Appellant's contention that he presented a prima facie case, thereby shifting the burden of production to Mazal, is not well taken. Pursuant to R.C. 3702.52(C)(3), "[t]he affected persons bear the burden of proving by a preponderance of evidence that the project is not needed or that granting the certificate would not be in accordance with sections 3702.51 to 3702.62 of the Revised Code or the rules adopted under section 3702.57 of the Revised Code." In the present case, appellant failed to meet that burden and the order of the director of ODH finding that the project is needed and that the granting of the CON was in accordance with law is supported by reliable, probative, and substantial evidence, and that order is in accordance with law.

Appellant's third assignment of error is without merit and is overruled.

■ Under the fourth assignment of error, appellant contends that ODH erred in admitting evidence *dehors* the record. Specifically, appellant argues that ODH improperly permitted appellant Mazal to supplement the record after the hearing, by means of certain exhibits attached to Mazal's posthearing brief. We disagree.

■ Regarding the admission of evidence following an adjudicatory hearing, R.C. 119.09 provides that "[t]he agency may order additional testimony to be taken *or permit the introduction of further documentary evidence*." (Emphasis added.) The decision to order additional evidence, under R.C. 119.09, is a discretionary act on the part of the agency. *Arnett v. Ohio State Racing Comm.* (Apr. 19, 1984), Franklin App. No. 83AP–721, unreported, at 16, 1984 WL 5710. Appellant has failed to show that ODH abused its discretion in allowing the admission of this evidence.

Appellant's fourth assignment of error is overruled.

Under the fifth assignment of error, appellant asserts that the director of ODH "admitted he did not review any of the evidence or transcripts in this matter." Appellant also argues that R.C. 3702.52(C)(4) constitutes an improper delegation of duties invested solely in the director of ODH, thus resulting in a violation of due process. We find no merit to either of these arguments.

■ We first address appellant's due process argument. R.C. 119.09 provides:

"In any adjudication hearing required by sections 119.01 to 119.13 of the Revised Code, the agency may appoint a referee or examiner to conduct the hearing. The referee or examiner shall have the same powers and authority in conducting the hearing as is granted to the agency. * * * The referee or examiner shall submit to the agency a written report setting forth his findings of fact and conclusions of law and a recommendation of the action to be taken by the agency. * * * The agency may order additional testimony to be taken or permit the introduction of further documentary evidence. The recommendation of the referee or examiner may be approved, modified, or disapproved by the agency, and the order of the agency based on such report, recommendation, transcript of testimony and evidence, or objections of the parties, and additional testimony and evidence shall have the same effect as if such hearing had been conducted by the agency. No such recommendation shall be final until confirmed and approved by the agency as indicated by the order entered on its record of proceedings, and if the agency modifies or disapproves the recommendations of the referee or examiner it shall include in the record of its proceedings the reasons for such modification or disapproval."

Pursuant to R.C. 3702.52(C)(3), if written objections to an application are filed by an affected person, the "director shall notify the applicant and assign a hearing examiner to conduct an adjudication hearing concerning the application in accordance with Chapter 119. of the Revised Code." R.C. 3702.52(C)(4) provides in part that "[t]he director shall base decisions concerning applications for which an adjudication hearing is conducted under division (C)(3) of this section on the report and recommendations of the hearing examiner."

Appellant's due process argument is not well taken. While R.C. 119.09 and 3702.52 allow for the appointment of a hearing examiner to conduct an adjudication hearing, the agency, by the clear language of R.C. 119.09, is the final authority, and the recommendation of the hearing examiner may be accepted or rejected by the agency. As noted by the court in *State v. Carroll* (1977), 54 Ohio App.2d 160, 171, 8 O.O.3d 285, 290–291, 376 N.E.2d 596, 602:

" 'In the absence of a contrary statute, due process or the concept of a fair hearing does not require that the actual taking of testimony be before the same officers as are to determine the matter involved. Where an agency expressly or impliedly has authority to delegate the taking of evidence to less than the whole number of its members or to an examiner or investigator, a hearing by such delegate does not deny due process and is not unfair, *provided the evidence so taken is considered by the agency in making the ultimate decision.*' (Emphasis added.)" Quoting 1 Ohio Jurisprudence 2d (1953) 507, Administrative Law and Procedure, Section 114.

Appellant also asserts that the director expressly admitted that he did not review the transcript of the hearing or the evidence introduced at the hearing. In support of this assertion, appellant quotes the following portion of the director of ODH's journal entry that adopted the recommendation of the hearing examiner: "NOW THEREFORE, after taking into consideration the report and recommendation and all briefs, notions, and objections filed, I hereby accept the recommendation of the hearing officer and order that certificate of need, ODH File No. 8026–01–94, be granted."

Appellant apparently contends that the above language indicates that the director failed to consider any of the record set forth in the transcript. We disagree. Appellant's bare assertion that the director conducted no review of his own is simply not supported by the record. As noted by ODH, the report and recommendation of the hearing examiner are replete with citations to the transcript, references to the testimony received, and documentary evidence presented. It is clear, in reviewing the director's order, that the director properly considered this evidence, and appellant cannot show, on the record before this court, that the director did not comply with the mandates set forth in either R.C. 119.09 or 3702.52.

Appellant's fifth assignment of error is without merit and is overruled.

Based upon the foregoing, appellant's first, second, third, fourth, and fifth assignments of error are overruled, and the order of the director of ODH is hereby affirmed.

*Order affirmed.*

BOWMAN and CLOSE, JJ., concur.