[Cite as *In re Avery Health Care Ctr.*, 2020-Ohio-3383.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| In the Matter of: | : | |
| Avery Health Care Center, | : | No. 19AP-539 |
| | | (ODH File No. 9115-01-17A) |
| (Avery Road Realty, LLC et al., | : | |
| | | (REGULAR CALENDAR) |
| Appellants). | : | |

D E C I S I O N

Rendered on June 18, 2020

**On brief:** *Vorys, Sater, Seymour & Pease LLP*, *Victor A. Walton*, *Jr.*, and *Jeffrey A. Miller*; *Webster & Associates Co.*, *LPA*, and *Geoffrey E. Webster*, for appellants Avery Health Care Center and Avery Road Realty, LLC.

**On brief:** *Dave Yost*, Attorney General, and *Henry G. Appel*, for appellee Ohio Department of Health.

**On brief:** *Rolf Goffman Martin Lang LLP*, *Ira S. Goffman*, and *Joseph F. Petros*, *III*, for appellees Vrable Land Holding Dublin, LLC, Vrable VI, Inc., Dublin Geriatric Care Co., and Healthcare Ventures of Ohio, LLC.

APPEAL from the Ohio Department of Health

SADLER, P.J.

{¶ 1} Appellants-appellants, Avery Health Care Center and Avery Road Realty, LLC (collectively "Avery"), appeals from an adjudication order issued by appellee-appellee, the director of the Ohio Department of Health, denying Avery's application for a certificate of need ("CON"). For the reasons that follow, we reverse.

**I. FACTS AND PROCEDURAL HISTORY**

{¶ 2} Harold Sosna is the owner and/or operator of a number of nursing homes in Ohio, and he is a licensed Ohio nursing home administrator. In 1998, Sosna and a partner

formed a company known as 72 Ventures LLC ("72 Ventures"). There is no dispute that Sosna owns half of the ownership units in 72 Ventures. In 2013, 72 Ventures purchased an existing nursing home known as Bryden Place. Several residents of Bryden Place were registered sex offenders and many others were individuals struggling with substance abuse and mental health issues. Because neither Sosna nor his partner had experience operating a non-traditional nursing home, 72 Ventures leased Bryden Place to a company by the name of Carrington. Another company, Provider Services, subsequently purchased Carrington and became the lessee and operator of Bryden Place.

{¶ 3} The evidence shows Bryden Place began having serious regulatory problems while being operated by Provider Services, and it was subsequently designated as a "special focus facility" by the Center for Medicare & Medicaid Services ("CMS"). Sosna testified that on learning in February 2017 that Bryden Place had been designated as a "special focus facility" by CMS, 72 Ventures terminated the lease agreement with Provider Services and entered into a lease agreement with Embassy Health Care ("Embassy"), whereby Embassy became operator of Bryden Place as Embassy Bryden Place.

{¶ 4} According to Sosna, though Embassy corrected many of the deficiencies cited by CMS, on July 21, 2017, Bryden Place received an R.C. 3721.03 notice from the Ohio Department of Health ("ODH") of a proposed license revocation. When a subsequent inspection by ODH revealed Bryden Place had not resolved a number of the deficiencies by the August 1, 2017 deadline, Bryden Place closed.

{¶ 5} On August 2, 2017, Avery submitted an application to ODH for a CON which would allow Avery to "purchase 115 beds from Regency Manor Nursing Home & Rehabilitation and 23 beds from Bryden Place to relocate to a newly constructed facility on Avery Road in Dublin, Ohio." (Joint Ex. 1 at 2.) A CON is written approval from the director of ODH authorizing a "reviewable activity." R.C. 3702.51(C). "Reviewable activities" include construction or replacement of a long-term care facility, renovation of an existing facility that involves a capital expenditure of two million dollars or more, an increase in bed capacity, or a relocation of beds. *See* R.C. 3702.511. The Avery CON application identified Sosna as the President/CEO and sole owner of the proposed new facility.

{¶ 6} On December 22, 2017, ODH denied the application. In denying the application, ODH claimed the July 21, 2017 notice to Bryden Place triggered the application of R.C. 3702.59(B)(1), which provides in relevant part as follows:

> The director [of ODH] shall not approve an application for a certificate of need for the addition of long-term care beds to an existing long-term care facility or for the development of a new long-term care facility if any of the following apply:
>
> * * *
>
> (b) During the sixty-month period preceding the filing of the application, a notice of proposed license revocation was issued under section 3721.03 * * * for * * * a nursing home owned or operated by the applicant or a principal participant, unless in the case of such a nursing home the notice was issued solely because the nursing home had already closed or ceased operations.

{¶ 7} Pursuant to the 60-month prohibition, a CON application shall not be approved if a "principal participant" of the CON applicant also owned or operated a nursing home that has been issued a notice of proposed license revocation in the 60 months prior to the applicant's submission of a CON application.

{¶ 8} Avery appealed the denial of the CON application and requested a hearing. R.C. 3702.60(A). On October 1, 2018, an evidentiary hearing was conducted by a hearing examiner. Vrable Land Holdings, LLC, Vrable VI, Inc., Dublin Geriatric Care Co., and Health Care Ventures of Ohio, LLC ("Vrable") intervened in the appeal as an "affected person" under R.C. 3702.51(M). At the hearing, Debra Walsh, supervisor of the Health Care Services Program and the CON program for ODH, testified the sole reason for the initial denial of Avery's CON application is set forth in the staff recommendation section of the CON staff report submitted December 20, 2017. The staff recommendation provides in relevant part as follows:

> On August 2, 2017, this CON application was filed. The applicant, Avery Road Realty, LLC, is 100% owned by Harold Sosna. As defined in §3702.51(R), Harold Sosna is a principal participant because he is a "person who has an ownership or controlling interest of at least five percent in an applicant."
>
> * * *
>
> Because Mr. Sosna is the owner of the long-term care beds and the building for Bryden Place, which is the subject of a

> proposal to revoke its license, and a principal participant in the applicant, Avery Road Realty, LLC., the director is prohibited from granting this application.

(Joint Ex. 1 at 262-63.)

{¶ 9} On January 8, 2019, the hearing examiner issued a report and recommendation concluding that "Avery's CON application should not have been denied under R.C. 3702.59(B)(1)(b)." (Report & Recommendation at 3.) The hearing examiner agreed with Avery that Sosna was neither an owner or operator of Bryden Place. The hearing examiner's report and recommendation provides in relevant part as follows:

> 2. * * * The Director's letter that denied Avery's CON application is expressly, based on a staff report, and the staff report concluded that Harold Sosna was a "principal participant" of Avery and that he owned the Bryden Place nursing home in 2017. In 2017 Bryden Nursing Home was served with a revocation notice under R.C. 3721.03. The staff report therefore concluded that Avery's application was precluded under R.C. 3702.59(B)(1)(b).
>
> 3. Although Avery concedes that Harold Sosna was its "principal participant" in 2017, it has shown, by a preponderance of the evidence, that Sosna did not own or operate Bryden Place during the sixty-month period preceding Avery's CON application date.
>
> * * *
>
> 6. In 2017 Bryden Place was owned by 72 Ventures.
>
> 7. In 2017 Harold Sosna owned 50% of the ownership units in 72 Ventures.
>
> 8. In 2017 Harold Sosna was not the owner of Bryden Place.
>
> 9. *Under R.C. 3702.59(B)(1)(b), the moratorium provision does not apply to a "principal participant" of an applicant merely because that person is a shareholder of an entity that owned or operated a nursing home cited under R.C. 3721.03.*
>
> 10. The moratorium provision of R.C. 3702.59(B)(1)(b) was incorrectly applied to deny Avery's August 2, 2017, CON application.

(Emphasis added.) (Report & Recommendation at 21-22.)

{¶ 10} Both ODH and Vrabel filed objections to the hearing examiner's report and recommendation. In an adjudication order dated August 1, 2019, ODH rejected the hearing examiner's recommendation and upheld the denial of Avery's CON application. The

adjudication order provides the following reasons for rejecting the hearing examiner's recommendation and denying Avery's CON application:

> In rendering his decision, the Hearing Examiner failed to recognize and give weight to the responses on the CON application. Question 9.12 asks for the name of the individuals or organizations having direct or indirect ownership interests amounting to an ownership interest of 5 percent or more (principal participants) in the disclosing entity (the applicant). Harold Sosna was identified as the 100% owner of the applicant, Avery Road Realty, LLC. Question 9.15 directs the Applicant to list the name of other Ohio nursing homes in which any of the persons identified in section 9.12 or 9.13 also have an ownership or interest of 5% or more. Applicant listed Bryden Place as one of the Ohio nursing homes in which Harold Sosna has an ownership or interest of 5% or more.
>
> In July 2017 the Operator of Embassy Bryden Place (Bryden Place) received a notice of proposed license revocation. *Bryden Place is a nursing home in which Sosna stated he had an ownership interest of 5% or more at the time the CON application was submitted by Avery, meeting the definition of principal participant in R.C. 3702.51(R).*
>
> R.C. 3702.59(B)(1) prohibits the Director from approving an application for CON, for the development of a new long-term care facility if:
>
> > (b) During the sixty-month period preceding the filing of the application, a notice of proposed license revocation was issued under section 3721.03 of the Revised Code for the existing long-term care facility in which the beds are being placed or a nursing home owned or operated by the applicant or a principal participant, unless in the case of such a nursing home the notice was issued solely because the nursing home had already closed or ceased operations.
>
> Based on the foregoing, I uphold the initial denial of Avery Health Care Center's application for certificate of need decided December 22, 2017.

(Emphasis added and omitted.) (Aug. 1, 2019 Adjudication Order at 2.)

{¶ 11} On January 22, 2018, Avery filed an appeal to this court, pursuant to R.C. 3702.60(A) and 119.12, from the August 1, 2019 adjudication order.

## II.  ASSIGNMENTS OF ERROR

{¶ 12} Avery assigns the following as trial court error:

[1.] The Director of the Ohio Department of Health ("ODH") misapplied R.C. § 3702.59(B)(1)(b) in wrongfully denying Avery Health Care Center's ("Avery") application for a Certificate of Need ("CON").

[2.] R.C. § 3702.59(B)(1)(b) violates Avery's due process rights and is unconstitutional, both as applied by the Director and as written.

## III.  STANDARD OF REVIEW

{¶ 13} R.C. 3702.60(E) sets forth the standard of review on appeal in relevant part as follows:

(2) In hearing the appeal, the court shall consider only the evidence contained in the record certified to it by the director. * * *

(3) The court shall affirm the director's order if it finds, upon consideration of the entire record and any additional evidence admitted under division (E)(2) of this section, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, it shall reverse, vacate, or modify the order.

## IV.  LEGAL ANALYSIS

### A.  Avery's First Assignment of Error

{¶ 14} In Avery's first assignment of error, Avery contends that ODH misapplied statutory law in denying Avery's CON application.  R.C. 3702.52(C) provides as follows:

All of the following apply to the process of granting or denying a certificate of need:

(1) If the project proposed in a certificate of need application meets all of the applicable certificate of need criteria for approval under sections 3702.51 to 3702.62 of the Revised Code and the rules adopted under those sections, the director shall grant a certificate of need for all or part of the project that is the subject of the application by the applicable deadline specified in division (C)(4) of this section or any extension of it under division (C)(5) of this section.

{¶ 15} The parties agree that if R.C. 3702.59(B)(1)(b) does not apply and if the project proposed in a CON application meets all the applicable criteria for approval, R.C. 3702.52(C)(1) requires ODH to approve it.

### 1. Principal Participant in Bryden Place

{¶ 16} ODH argues that Sosna's ownership interest in 72 Ventures makes him a "principal participant" in Bryden Place as that term is used in R.C. 3702.59(B)(1)(b). Accordingly, ODH contends the denial of Avery's CON application is required by the 60-month prohibition in R.C. 3702.59(B)(1). We disagree.

{¶ 17} In construing a statute, a court's paramount concern is the legislature's intent in enacting it. *State ex rel. Cincinnati Enquirer v. Jones-Kelley*, 118 Ohio St.3d 81, 2008-Ohio-1770, ¶ 17; *State ex rel. Russell v. Thornton*, 111 Ohio St.3d 409, 2006-Ohio-5858, ¶ 11. " 'The court must look to the statute itself to determine legislative intent, and if such intent is clearly expressed therein, the statute may not be restricted, constricted, qualified, narrowed, enlarged or abridged; significance and effect should, if possible, be accorded to every word, phrase, sentence and part of an act * * *.' " *State ex rel. McGraw v. Gorman*, 17 Ohio St.3d 147, 149 (1985), quoting *Wachendorf v. Shaver*, 149 Ohio St. 231 (1948), paragraph five of the syllabus. "In construing the terms of a particular statute, words must be given their usual, normal, and/or customary meanings." *Washington Cty. Home v. Ohio Dept. of Health*, 178 Ohio App.3d 78, 2008-Ohio-4342, ¶ 28 (4th Dist.), quoting *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, ¶ 12. To determine legislative intent, R.C. 1.42 dictates that statutory "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." R.C. 1.42 further provides that "[w]ords and phrases that have acquired a technical or particular meaning, whether by legislative definition or otherwise, shall be construed accordingly."

{¶ 18} The relevant language of R.C. 3702.59(B)(1)(b) provides that "[t]he director shall not approve an application for a certificate of need * * * for the development of a new long-term care facility if * * * [d]uring the sixty-month period preceding the filing of the application, a notice of proposed license revocation was issued under section 3721.03 * * * [to] a nursing home *owned or operated by the applicant or a principal participant.*" (Emphasis added.) We do not believe it is reasonable to interpret the language used by the General Assembly in R.C. 3702.59(B)(1)(b) as prohibiting approval of a CON application submitted by a person who might be considered a "principal participant" of the owner or operator of the nursing home that was issued a notice of proposed license revocation. It is

clear from the statutory language that the term "principal participant" refers exclusively to a person associated with the applicant.

{¶ 19} Even if we were to agree that the operative language of R.C. 3702.59(B)(1)(b) might be reasonably construed in the manner advocated by ODH, the statutory definition of "principal participant" forecloses such a construction. The term "principal participant," for purposes of R.C. 3702.51 to 3702.62, is defined in R.C. 3702.51(R) as follows:

> "Principal participant" means both of the following:
>
> (1) A person who has an ownership or controlling interest of at least five per cent *in an applicant*, in a long-term care facility that is the subject of an application for a certificate of need, or *in the owner or operator of the applicant or such a facility*;
>
> (2) *An officer*, director, trustee, or general partner *of an applicant*, of a long-term care facility that is the subject of an application for a certificate of need, *or of the owner or operator of the applicant or such a facility*.[1]

(Emphasis added.)

{¶ 20} "Principal participant," as defined in R.C. 3702.51(R) and Ohio Adm.Code 3701-12-01(V) is a term used only in reference to a "person" who has an ownership interest in the CON "applicant."[2] This definition is consistent with the statutory language in R.C. 3702.59(B)(1)(b) and is inconsistent with the interpretation adopted by ODH in the adjudication order. By inserting the statutory definition of "principal participant" into R.C. 3702.59(B)(1)(b), in place of the term "principal participant," the intent of the General Assembly in drafting the 60-month prohibition is apparent. When the definition is added in place of the term "principal participant," the prohibition reads in relevant part: "The director shall not approve an application for a certificate of need * * * if * * * [d]uring the sixty-month period preceding the filing of the application, a notice of proposed license revocation was issued under section 3721.03 * * * for * * * a nursing home owned or operated by the applicant or [[a] person who has an ownership or controlling interest of at least five per cent *in an applicant*, in a long-term care facility that is the subject of an

---

[1] R.C. 3102.51(R) and Ohio Adm.Code 3701-12-01(V) contain identical definitions of "principal participant."
[2] Under R.C. 3102.51(A), "applicant" means any person that submits an application for a CON and who is designated in the application as the applicant. Under R.C. 3102.51(B), "person" means any individual, corporation, business trust, estate, firm, partnership, association, joint stock company, insurance company, government unit, or other entity.

application for a certificate of need, or *in the owner or operator of the applicant or such* a facility]." (Emphasis added.) R.C. 3702.59(B)(1)(b). When R.C. 3702.59(B)(1)(b) is properly applied to the facts of this case, the prohibition reads in relevant part: "The director shall not approve an application for a certificate of need * * * if * * * [d]uring the sixty-month period preceding the filing of the application, a notice of proposed license revocation was issued under section 3721.03 * * * for * * * a nursing home owned or operated by [Avery] or [Sosna]."

{¶ 21} There is no question Sosna is a "principal participant" of the applicant, Avery. There is also no dispute that on July 21, 2017, Sosna held a 50 percent ownership interest in 72 Ventures and that 72 Ventures owned the building and grounds associated with Bryden Place, the long-term care beds in Bryden Place, and the operating rights to Bryden Place. Sosna would clearly fit the definition of a "principal participant" of 72 Ventures if 72 Ventures were to file a CON application. However, 72 Ventures is not the applicant in this case. The applicant in this case is Avery.

{¶ 22} We review questions of statutory interpretation de novo. *Turner v. CertainTeed Corp.*, 155 Ohio St.3d 149, 2018-Ohio-3869, ¶ 11. The problem with construction of the statute adopted by ODH is that it ignores the plain language of the statutory definition of "principal participant." *See id.* at ¶ 19 ("The problem with Turner's reading of the statute is that it ignores the plain language of the statutory definition of 'smoker.' "); *Xyovest, Inc. v. Limbach*, 62 Ohio St.3d 469 (1992) (the Tax "Commissioner had interpreted the governing statute incorrectly and had ignored a part of the statutory definition of the word 'price' "); *Sims Bros., Inc. v. Tracy*, 83 Ohio St.3d 162, 166 (1998) (Supreme Court of Ohio refused to accept taxpayer's definition of the statutory term "manufacturing operation," for purposes of the exemption because it "would * * * disregard this earlier part of the statutory definition, and would be in violation of our duty to give meaning to all portions of a statute"). Because "principal participant," as used in R.C. 3702.59(B)(1)(b) and as defined in R.C. 3702.51(R), relates exclusively to CON applicants and because the CON applicant is Avery, it is not reasonable to consider Sosna a "principal participant" in Bryden Place. Thus, the prohibition in R.C. 3702.59(B)(1) does not apply to Sosna, and it could not be relied on by ODH as the basis for denying Avery's CON application.

{¶ 23} ODH nonetheless argues that this court is required to defer to the director's interpretation of the term "principal participant" in R.C. 3702.59(B)(1)(b). As a general rule, "[a] reviewing court, in interpreting a statute, 'must give due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command.' " *In re 138 Mazal Health Care, Ltd.*, 117 Ohio App.3d 679, 685 (10th Dist.1997), quoting *State ex rel. McLean v. Indus. Comm.*, 25 Ohio St.3d 90, 92 (1986). *See also In re Manor Care*, 10th Dist. No. 05AP-398, 2005-Ohio-5703, ¶ 16. "[I]in order to sustain an agency's application of a statutory term, a reviewing court ' "need not find that its construction is the only reasonable one or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings." ' " *In re 138 Mazal* at 685, quoting *Udall v. Tallman*, 380 U.S. 1, 16 (1965), quoting *Unemp. Comp. Comm. of Territory of Alaska v. Aragon*, 329 U.S. 143, 153 (1946). *See also In re Certificate of Need Application for Project "Livingston Villa,"* 10th Dist. No. 15AP-1146, 2017-Ohio-196, ¶ 39; *Northside Amateur Boxing School Bingo Club v. Hamilton Cty. Gen. Health Dist.*, 184 Ohio App.3d 596, 2009-Ohio-5122, ¶ 17 (10th Dist.).

{¶ 24} *In re 138 Mazal* is an example of the application of the general rule of deference in a case involving ODH. In that case, a nursing home administrator, Bruce Bable, challenged an ODH order granting a CON to a competing healthcare agency for a proposed project to establish a new 100-bed nursing home. A hearing examiner issued a decision recommending the director grant the CON and the director accepted the hearing examiner's recommendation. On appeal, Bable argued the decision was not supported by reliable, probative, and substantial evidence, and it was not in accordance with law because the director misapplied the statutory law. The relevant provision permitted relocation of "existing beds," and Bable argued that in order to relocate beds under the relevant statutory law, the beds had to actually have been in use before the director could approve relocation. *Id.* at 684, citing R.C. 3702.68.

{¶ 25} The applicable Ohio Administrative Code provision defined "existing and approved beds." *Id.* at 684-85. In granting the CON, the director determined that the term "existing beds," as used in the statute and rule, included beds that had been previously

approved but had not been put into use. *Id.* at 686. In affirming the adjudication order, this court concluded:

> [W]hile the statute at issue is silent regarding a definition of "existing beds," we have previously noted that the administrative rule defining "existing and approved beds" is susceptible to more than one interpretation, including a construction consistent with a broader reading of R.C. 3702.68 than the interpretation suggested by appellant. While ODH's interpretation of the relevant statute and rules may not be the only plausible one, we conclude that the agency's construction of the statute, finding that the beds at issue (long-term care beds for which a CON was previously approved) " 'exist' and were capable of being relocated," is not unreasonable.

*Id.* at 686.

{¶ 26} In reaching this determination, we applied the general rule of statutory construction that requires this court give " 'due deference to an administrative interpretation formulated by an agency which has accumulated substantial expertise, and to which the legislature has delegated the responsibility of implementing the legislative command.' " *In re 138 Mazal* at 685, quoting *McLean* at 92. *See also In re Manor Care* at ¶ 16.

{¶ 27} Here, ODH asks this court to defer to its construction of the term "principal participant" for purposes of the prohibition in R.C. 3702.59(B)(1)(b). As discussed above, however, the term "principal participant" is clearly defined both in R.C. 3702.51(R) and Ohio Adm.Code 3701-12-01(V). As also discussed above, those definitional sections make clear that the term "principal participant" describes a person associated with the applicant, not a person associated with the nursing home that was issued a notice of proposed license revocation. Unlike the administrative code provision at issue in *In re 138 Mazal,* we find that the statutory and administrative definition of "principal participant" is not reasonably susceptible to more than one interpretation. This court is not required to defer to an administrative construction of a term that is not reasonable in light of the definition in the statute or administrative rule. *In re Acubens, LLC*, 10th Dist. No. 17AP-870, 2018-Ohio-2607, ¶ 13.

{¶ 28} For the foregoing reasons, we hold that ODH erred when it denied Avery's CON application based on the director's determination that Sosna was a "principal

participant" of Bryden Place. Though Sosna is clearly a principal participant in the applicant, Avery, the 60-month prohibition in R.C. 3702.59(B)(1)(b) may be applied to Sosna only if he was either an owner or operator of Bryden Place.

### 2. Operator of Bryden Place

{¶ 29} At the hearing on Avery's appeal from the initial denial of the CON application, Greg Glass, Chief of the Bureau of Regulatory Operations at ODH, explained why ODH applied R.C. 3702.59 to Avery's CON application:

> Q. How does licensure law apply to the lessor of a nursing facility?
>
> A. Well, again, if – we license the operator of the facility. However, anybody with a 5 percent or greater interest in the entity that is the licensor, for example, is subject to some licensing provisions and prohibitions.
>
> In Mr. Sosna's case, as to Bryden, he owned the operating rights to the beds. He was not the operator, per se, but he owned the operating rights and he owned the building, as I recall, all of which was with substantial involvement that, in our view, made him subject to the provision.

(Oct. 1, 2018 Tr. at 84.)

{¶ 30} ODH did not find that Sosna was the operator of Bryden Place for purposes of the prohibition in R.C. 3702.59(B)(1)(b). In this appeal, however, ODH argues that 72 Ventures could be considered the operator of Bryden Place and that the 60-month prohibition should be to Sosna because he was a "principal participant" in 72 Ventures.[3] In light of our determination that "principal participant" refers exclusively to a person associated with the applicant and not a person associated with the owner or operator of the nursing home that was issued the notice of proposed license revocation, the question whether 72 Ventures operated Bryden Place is immaterial to Avery's CON application.

### 3. Owner of Bryden Place

{¶ 31} In support of the August 1, 2019 adjudication order, Vrable argues that this court should adopt a definition of a nursing home "owner" for purposes of the 60-month prohibition in R.C. 3702.59(B)(1)(b) that includes a person who is an "indirect owner" of

---

[3] ODH claims that 72 Ventures was an operator of Bryden Place by virtue of a provision in its lease with Embassy that permitted 72 Ventures to terminate the lease with Embassy in the event lessee is guilty of "waste." (Joint Ex. 1 at 213.) Under the definitional sections of the lease, "waste" includes "imminent threat of loss of licensure." (Joint Ex. 1 at 209.)

the nursing home that was issued the notice of proposed license revocation. Sosna argues that because Sosna owns a 50 percent interest in 72 Ventures and 72 Ventures wholly owns Bryden Place, it was reasonable for ODH to consider Sosna an "owner" of Bryden Place for purposes of the prohibition. We disagree.

{¶ 32} Initially, we note ODH, in the August 1, 2019 adjudication order, determined the 60-month prohibition barred the director from approving Avery's CON application based on the director's determination that Sosna was a "principal participant" in Bryden Place. However, as set out above, Sosna could not be considered a "principal participant" in Bryden Place because neither 72 Ventures nor Bryden Place are CON applicants. Nevertheless, because ODH, in denying Avery's CON application, made a finding that Sosna had an ownership interest in Bryden Place, we will consider Vrable's argument.

{¶ 33} Vrable claims that R.C. 3702.59(B)(1) prohibited ODH from approving Avery's CON application because Sosna was an "owner" of Bryden Place when ODH issued the notice of proposed license revocation on July 21, 2017. Avery counters that the evidence conclusively establishes that 72 Ventures was the sole owner of Bryden Place, not Sosna. The hearing examiner, in rejecting Vrable's ownership argument, found as follows:

> 4. During the sixty-month period preceding Avery's CON application Bryden Place was owned by 72 Ventures, Ltd., an Ohio limited liability company. As an Ohio limited liability company, 72 Ventures has the authority to acquire, hold, and transfer property in its own name. R.C. 1705.03. This is also set forth in R.C. 1705.34 as follows: "Real and personal property owned or purchased by a limited liability company shall be held and owned in the name of the company. Conveyance of that property shall be made in the name of the company." Therefore, property held by 72 Ventures, including Bryden Place, was its property and not the property of its individual members, including Harold Sosna.
>
> 5. A limited liability company is a separate entity from its members. The debts, assets, and liabilities of a limited liability company are separate from those of its members. A managing member of a limited liability company does not become personally liable for the debts and obligations of a limited liability company when acting in that capacity. R.C. 1705.48. Therefore, although Harold Sosna was a unit holder and the managing member of 72 Ventures, that did not make him an owner of Bryden Place in his personal capacity.

(Report & Recommendation at 21-22.)

{¶ 34} In our view, the hearing examiner reached the only reasonable conclusion supported by the law and facts in this case, and we agree with the hearing examiner's determination. The word "owner," for purposes of the CON legislation, is not defined either in R.C. 3702.51 or Ohio Adm.Code 3701-12-01. This court has previously noted that "ownership * * * is commonly understood to mean '[t]he collection of rights allowing one to use and enjoy property, including the right to convey it to others.' " *Regency Plaza, LLC v. Morantz*, 10th Dist. No. 06AP-837, 2007-Ohio-2594, ¶ 29, quoting Black's Law Dictionary 1131 (7th Ed.1999). As the hearing examiner noted, R.C. 1705.34 provides "[r]eal and personal property owned or purchased by a limited liability company shall be held and owned in the name of the company [and] [c]onveyance of that property shall be made in the name of the company."

{¶ 35} Where a statute is silent regarding the definition of a particular term and the administrative agency has adopted a rule consistent with a broader reading of a statutory term, this court will generally defer to the agency interpretation of its own statutes and rules so long as the interpretation is not unreasonable. *In re 138 Mazal*, 117 Ohio App.3d at 686. Words in an unambiguous statute, however, should be applied in accordance with common usage, not interpreted. *Ohio ex rel. Shisler v. Ohio Pub. Emps. Retirement Sys.*, 10th Dist. No. 07AP-946, 2008-Ohio-4830, ¶ 9, *aff'd*, 122 Ohio St.3d 148, 2009-Ohio-2522. We do not perceive ambiguity in the word "owner," as it is used in R.C. 3702.59(B)(1)(b). Thus, there was no need for ODH to interpret the word "owner" as it is used in the statute.

{¶ 36} Vrable claims that support for an expansive definition of ownership can be gleaned from the questionnaire distributed to CON applicants by ODH. We agree that the questionnaire reflects an unwritten policy on the part of ODH to apply the 60-month prohibition to any person who has an indirect ownership interest in a nursing home that was issued a notice of proposed license revocation in the 60-month period immediately preceding the CON application. An unwritten administrative policy, however, does not have the force and effect of a legally promulgated statute or administrative rule.

{¶ 37} As previously noted, *In re 138 Mazel* is a case where this court deferred to ODH's interpretation of statutes and rules pertaining to CON applications. The statute and rule at issue in that case involved the transfer of "existing beds" among long-term health care facilities. In affirming the ODH adjudication order, this court deferred to the director's

interpretation of "existing beds" as there was no question that ODH had accumulated substantial expertise in the regulation of long-term health care facilities, and the General Assembly delegated to ODH the responsibility of implementing the legislative command with respect to the type of beds that may be transferred in connection with a CON application. In this case, however, the General Assembly has not expressed a similar delegation of responsibility to ODH regarding ownership of real and personal property by a limited liability company. Nor has the General Assembly by the enactment of R.C. 3702.59(B)(1)(b) clearly expressed an intent to broaden the definition of "owner" to include a person who is an indirect owner of a nursing home that was issued a notice of proposed license revocation in the 60-month period immediately preceding the CON application. The question whether ODH could adopt an administrative rule consistent with R.C. 3702.01 to 3702.99 that extends the definition of "owner," for purposes of R.C. 3702.59(B)(1)(b), is not a question before this court in this appeal.

{¶ 38} Vrable contends that failing to adopt a definition of "owner," for purposes of the 60-month prohibition, that includes an indirect owner "would entirely defeat the purpose of Revised Code Section 3702.59(B)(1) and of Ohio's CON scheme in general, which aims to ensure the quality and commitment of the principal participants involved in proposed nursing-home projects." (Vrable Brief at 18.) We disagree.

{¶ 39} The statute, as written, extends the 60-month prohibition to minority and fractional owners of an "applicant" by including a "principal participant" within its scope. *See* R.C. 3702.59(B)(1)(b), 3702.51, and Ohio Adm.Code 3701-12-01. In this instance, for example, had Sosna owned or operated Bryden Place, the prohibition would have barred ODH from granting Avery's CON application even though Sosna was not the applicant. In our view, the General Assembly has not clearly expressed an intent to further extend the scope of the 60-month prohibition to include a person who has an indirect ownership interest in the nursing home that was issued a notice of proposed license revocation.[4]

---

[4] By way of analogy, we note that a member of a limited liability company has no personal liability by reason of being a member or manager of the company. R.C. 1705.48. However, a limited exception to this general rule has been established in the common law whereby members may be held liable for their own bad acts notwithstanding the protections afforded by the corporate form when they use the corporation for criminal or fraudulent purposes to the detriment of a third party. *Ettayem v. Ramsey*, 10th Dist. No. 17AP-155, 2019-Ohio-675, *appeal not accepted*, 156 Ohio St.3d 1498, 2019-Ohio-3505. "Piercing the corporate veil is a 'rare exception' and only used 'in the case of fraud and certain other exceptional circumstances.' " *Id.* at ¶ 29, citing

{¶ 40} For the foregoing reasons, we conclude ODH misapplied R.C. 3702.59(B)(1)(b) when it determined the 60-month prohibition applied to Sosna and denied Avery's CON application on that basis. Thus, on consideration of the entire record, we do not find the adjudication order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of such a finding, this court is obligated to reverse and vacate the adjudication order. R.C. 3702.60(E).

{¶ 41} For the foregoing reasons, Avery's first assignment of error is sustained.

### B. Avery's Second Assignment of Error

{¶ 42} In Avery's second assignment of error, Avery contends that R.C. 3702.59(B)(1)(b) violates Avery's due process rights and is unconstitutional, both as applied by the director and as written. Because we have sustained Avery's first assignment of error on finding ODH misapplied R.C. 3702.59(B)(1)(b) in denying Avery's CON application, we need not reach Avery's constitutional claims. *State ex rel. Lieux v. Westlake*, 154 Ohio St. 412 (1951), paragraph one of the syllabus ("Constitutional questions will not be decided until the necessity for their decision arises."); *Interstate Motor Freight Sys. v. Bowers*, 164 Ohio St. 122 (1955), paragraph two of the syllabus ("Where a case can be determined upon any other theory than that of the constitutionality of a challenged statute, no consideration will be given to the constitutional question."). *See also Champaign Cty. Nursing Home v. Tompkins*, 10th Dist. No. 98AP-255, 2003-Ohio-1706, ¶ 51 (this court will not issue a declaration of appellant's constitutional rights where a favorable decision on the statutory claims in a subsequent administrative hearing or an appeal under R.C. Chapter 119 may render the constitutional issues moot). Our determination that Avery is entitled to the relief sought under the relevant statutory law moots Avery's assignment of error challenging the constitutionality of the statute as written and as applied to Avery. Accordingly, Avery's second assignment of error is moot.

### V. CONCLUSION

{¶ 43} Having sustained Avery's first assignment of error and having mooted Avery's second assignment of error, we reverse the adjudication order of the director of the

---

*Dombroski v. WellPoint, Inc.*, 119 Ohio St.3d 506, 2008-Ohio-4827, ¶ 17, quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003), *superseded in part by statute on other grounds*.

Ohio Department of Health, vacate the order denying Avery's CON application, and remand the matter to ODH to issue the appropriate CON to Avery.

*Judgment reversed*;
*cause remanded with instructions.*

BROWN and KLATT, JJ., concur.

_____